IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**KATTY RODRIGUEZ-VIVES,**
**Plaintiff**

**v.**                                                          **CIVIL No.: 05-2136 (DRD)**

**COMMONWEALTH OF**
**PUERTO RICO, et al.,**
**Defendant**

## OPINION AND ORDER

Pending before the Court is co-defendant, the Commonwealth of Puerto Rico's *Motion to Dismiss* (Docket Entry No. 8) moving the Court to dismiss the instant complaint for plaintiff's failure to state a claim upon which relief can be granted due to the fact that the Commonwealth of Puerto Rico is immune from suit under the Eleventh Amendment of the Constitution of the United States. For the reasons stated herein, defendant's motion is hereby partially **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff Katty Rodriguez-Vives avers that in response to a Job announcement posted by the Puerto Rico Firefighters Corps (PRFC), on June 2001, she applied for a position as a firefighter. Allegedly, upon satisfactorily passing all initial examinations, plaintiff was placed on an eligibility list before being scheduled for a personal interview. On or around April 12, 2002, plaintiff was interviewed by members of the PRFC and was informed that she would be chosen depending on the outcome of the results. On June 26, 2002, plaintiff contacted the PRFC's Human Resources Office and was informed that she had been selected for the position she had applied and was required to take a drug test.

On October 2002, plaintiff received a letter informing that although her named was listed on the Eligibility List, she had not been selected as a candidate to become a firefighter but would remain in said list allowing her to participate in future interviews. On May 8, 2003, plaintiff received another letter from the PRFC stating that she remained listed in the Eligibility List, that she had not been selected as a candidate, and that she would remain listed allowing her to participate in future interviews. Similar letters were received by plaintiff on June 20, 2003, and January 27, 2004, both signed by PRFC's Chief Agustin Cartagena and Interim Chief German Ocasio Morales, respectively assuring plaintiff that her file would be evaluated in accordance with the PRFC's regulations once

vacancies for firefighters became available.  On July 2004, plaintiff was once again interviewed, and until the filing date of the instant complaint, plaintiff has not received further communications from the PRFC relating to her application.

 On October 24, 2005, Rodriguez filed the instant complaint (Docket No. 1) claiming that the PRFC had discriminated because of her gender, and that defendants had violated her federal constitutional right to Equal Protection and Due Process vindicated through 42 U.S.C. §§1983,and Arts. 1802,1803 of the Puerto Rico Civil Code (Puerto Rico general torts  and vicarious responsibility statutes), PR. Law Ann., Tit. 31 §§5141-5142.[1]  Plaintiff alleges that the PRFC has continuously recruited personnel less qualified than her without providing an explanation for bypassing her selection as a firefighter although she meets the position's requirements.  Plaintiff avers that during each of the interview sessions, she was the only female amongst nine (9) additional male applicants that entered the interview process.

Plaintiff seeks redress by requesting the court to issue declaratory judgment under 28 U.S.C. §2201, sustaining that defendant's actions violates plaintiff's constitutional right to equal protection; to issue an injunctive relief ordering defendants to cease further discriminatory actions against plaintiff, and to enroll plaintiff in the next available firefighter class, and in the alternative, award monetary damages against the defendants in their individual capacity; and finally, to award further monetary damages against the defendants in their individual capacity due to emotional and physical distress, loss of income and benefits, and finally exemplary and punitive damages.

In turn, co-defendant Commonwealth of Puerto Rico, without submitting to the Court's jurisdiction, moved for dismissal sustaining that the Eleventh Amendment of the Constitution of the United States provides immunity to the Commonwealth from being sued in federal court therefore, the present claim must be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). The Court proceeds to review the Commonwealth's claim.

## LEGAL FRAMEWORK

### a) Motion to Dismiss under Rule 12(b)(6), Fed.R.Civ.P.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to

---

[1]Although plaintiff's complaint cites, in its introduction paragraph, title 28 of the United States Code, the Court understands that plaintiff actually refers to title 42 as stated at the top right corner of said document.

state a claim unless it appears **beyond doubt** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)(emphasis added); see also *Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir.1991). The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard* 83 F.3d 1, 3 (1st Cir. 1996)(citations omitted); see also *Berríos v. Bristol Myers Squibb Caribbean Corp.*, 51 F.Supp.2d 61 (D.P.R. 1999). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Romero-Barceló v. Hernández-Agosto*, 75 F.3d 23, 28 n. 2 (1st Cir.1996) (quoting *Gooley v. Mobil Oil Corp.*, 51 F.2d 513, 514 (1st Cir.1988)).

    Therefore, in order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooly v. Mobil Oil Corp.*, 851 F.2d at 514.  In sum, a claim shall be dismissed under Rule 12(b)(6) **only if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief**. *Conley v. Gibson*, 355 U.S. at 45-46. (Emphasis added.)

**b) Sovereign Immunity Protection under the Eleventh Amendment**

    As a general rule, the Eleventh Amendment of the Constitution of the United States bars suits brought in federal courts against states[2] by individuals, whether they be citizens of the state being

---

[2] The First Circuit consistently has held that Puerto Rico is considered a "State" for Eleventh Amendment purposes, and therefore Eleventh Amendment applies with full force to the Commonwealth of Puerto Rico.  See, e.g.: *Negron Gaztambide v. Hernandez Torres*, 145 F.3d 410 (1st Cir. 1998)(vacating judgment against Puerto Rican officials based, in part, upon the Commonwealth's Eleventh Amendment immunity); *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 991 F.2d 935, 939 n.3 (1st Cir. 1993)("We have consistently treated Puerto Rico as if it were a state for Eleventh Amendment purposes."); *Aviles-Martinez v. Monroig*, 963 F.2d 2, 8 (1st Cir. 1992) (holding that an entity which is an alter ego of Puerto Rico is protected by the Eleventh Amendment); *Trailer Marine Transp. Corp. v. Rivera Vazquez*, 977 F.2d 1, 7 (1st Cir. 1992)("Puerto Rico has immunity to suit in common with state governments."); *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 121 (1st Cir. 1991) ("The [E]leventh [A]mendment, despite the absence of any express reference, pertains to Puerto Rico in the same manner, and to the same extent, as if Puerto Rico were a State."); *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 516 (1st Cir. 1987)("The [E]leventh [A]mendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico...." ) ; *Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of P.R.*, 818 F.2d 1034 (1st Cir. 1987)(analyzing whether a public corporation should be treated as "arm" of Puerto Rico so as to invoke Eleventh Amendment protections); *Fernandez v. Chardon*, 681 F.2d 42, 59 n.13 (1st Cir. 1982)(Puerto Rico enjoys the full benefits of the Eleventh Amendment); *Ezratty v. Puerto Rico*, 648 F.2d 770, 776 n.7 (1st Cir. 1981)("The principles of the Eleventh Amendment, which protect a state from suit without its consent, are fully applicable to the Commonwealth of Puerto Rico."); *Litton Indus., Inc. v. Colon*, 587 F.2d 70 (1st Cir. 1978)(action against Puerto Rico barred by Eleventh Amendment, unless immunity is expressly abrogated by Congress acting under the Fourteenth Amendment); *Perez v. Rodriguez Bou*, 575 F.2d 21, 25 (1st Cir. 1978)(analyzing whether University of Puerto Rico is sufficiently an "arm" of Puerto Rico to benefit from Eleventh Amendment); see also *Salkin v. Puerto Rico*, 408 F.2d 682 (1st Cir. 1969)(Puerto Rico has "sovereign power" to consent to suits only in its own courts).

sued, of another state, or of a foreign nation. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997); *Hans v. Louisiana*, 134 U.S. 1 (1890). However, there are some narrow exceptions to this general rule. Specifically, the Eleventh Amendment protection does not apply in four (4) circumstances: a state may consent to be sued in federal forum; a state may waive its own immunity by statute or the like; Congress may abrogate state immunity; or, if circumstances allow, other constitutional imperatives may take precedence over the Eleventh Amendment's bar. *Metcalf* at 938.

However, as to the third exception, that is, when Congress has unequivocally expressed its intent to abrogate the immunity, the Supreme Court has recognized that said abrogation shall be performed expressly under §5 of the Fourteenth Amendment, which provides Congress the authority to abrogate a State's Eleventh Amendment immunity. *Seminole Tribe v. Florida*, 517 U.S. 44 (1996)(overruled by *Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989), thereby eliminating Interstate Commerce Clause as an authority to abrogate); see also *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976)(Eleventh Amendment is limited by the enforcement power under §5 of Fourteenth Amendment to enforce the Fourteenth Amendment's substantive provisions, specifically, the case of sexual discrimination).

**c) The Puerto Rico Firefighters Corps as an Arm of the State**

"Sovereign immunity under the Eleventh Amendment extends beyond the core of the state government to 'arms of the state.'" *Buck v. Puerto Rico Symphony Orchestra Corp.*, 849 F.Supp. 141, 144 (D.P.R. 1994)(quoting *Metcalf & Eddy, Inc.*, 991 F.2d 935, 939 (1st Cir. 1993)). As with claims against the Commonwealth itself, the claims in federal courts for damages against its agencies are precluded by the Eleventh Amendment, since they must, if successful, be satisfied from the coffers of the Commonwealth of Puerto Rico. See *Reyes v. Supervisor of DEA*, 834 F.2d 1093, 1097-98 (1st Cir. 1987)(citing *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 776 n.7 (1st Cir. 1981)). Because it is unquestionable the Eleventh Amendment bar against the Commonwealth of Puerto Rico, see note 2, *infra*, the Court *sua sponte*, analyses the Eleventh Amendment bar as to the potential arm of the state, the PRFC.

The applicable jurisprudence has provided a test which will allow the Court to determine whether the PRFC is an "arm of the state" for Eleventh Amendment purposes. For instance, the Court shall consider: (1) whether the PRFC has funding power to enable to satisfy judgments without direct state participation or guarantees; (2) whether the PRFC's function is governmental or propriety; (3) whether the PRFC is separately incorporated; (4) whether to what extend the state

exerts control over the PRFC; (5) whether the PRFC has power to sue, be sued, and enter contracts in its own name and right; (6) whether the PRFC's property is subject to state taxation; and (7) whether the state has immunized itself from responsibility for PRFC's acts or omissions. *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Authority*, 991 F.2d at 935; see also, *Wojcik v. Massachusetts State Lottery Com'n.*, 300 F.3d 92 (1st Cir. 2002).

However, the analysis developed in *Metcalf & Eddy, Inc.*, has been further refined by the First Circuit Court. In *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and the Caribbean Cardiovascular Center Corp.*, 322 F.2d 56,66-68 (1st Cir. 2003), the appellate court adopted the criterion developed by the Supreme Court in *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994). The *Hess* court requires a two-step analysis. *Fresenius*, 322 F.3d at 65. Firstly, the court must examine how the state structured the entity. The indicators to be examined showing immunity or the absence thereof includes: 1) the extent of state control including through the appointment of board members and the state's power to veto board actions or enlarge the entity's responsibilities; 2) how the enabling and implementing legislation characterized the entity and how the state courts have viewed the entity; 3) whether the entity's functions are readily classifiable as state functions or local or non-governmental functions; and 4) whether the state bore legal liability for the entity's debts. *Fresenius*, 322 F.3d at 65(citing *Hess*, 513 U.S. at 44-46).

Should the analysis of the indicators point at different directions, then the court proceeds to the second stage of analysis. In the second stage, "the vulnerability of the state's purse is the most salient factor in the Eleventh Amendment determination". *Fresenius*, 322 F.3d at 65. This stage of analysis, also known as the "vulnerability inquiry" examines amongst others the following factors: "[1] whether the state laws impose an obligation on the state to be responsible for payment of judgments against the entity (on this point federal courts are not free to assume that a state will voluntarily assume the payment of the entity's debts if the entity is in need); [2]] other sources of revenue for the entity, and whether the agency is so structured that, as a practical matter, the state anticipated budget shortfalls that would render the entity constantly dependent on the state." *Fresenius*, 322 F.3d at 65(citing *Hess*, 513 U.S. at 49-50). Should the examination provide that the state's treasury is not at risk, the entity is not entitled to the immunity provided by the Eleventh Amendment. *Fresenius*, 322 F.3d at 65.

The Court, therefore, proceeds to examine whether the PRFC is an "arm of the state" for purposes of the immunity afforded by the Eleventh Amendment.

At the outset, the Court notes that the PRFC was created by enactment of Act No. 43 of June 21, 1988, as amended by Act No. 33, January 2, 2003, also known as the "Puerto Rico Firefighters Corps Act", P.R. Laws Ann., Tit. 25 §331 *et seq*.  The PRFC was provided with the duties, amongst others, to prevent and fight fires, save lives, guarantee adequate protection to the citizenry in general from fires.  P.R. Laws Ann., Tit. 25, §331a(c).  Further, the PRFC is headed by the Fire Chief who is appointed by the Governor with the advice and consent of the Senate and shall hold office for a term of six (6) years, or until its successor is appointed.  P.R. Laws Ann.,Tit. 25, §331b.  Amongst the duties and responsibilities of the Fire Chief, and relevant to the instant case, the Fire Chief shall "appear before the courts solely through the Secretary of Justice, to file actions that are in order according to the law and corresponding regulations".  P.R. Laws Ann.,Tit. 25, §331c(n).  Similarly, the Act provides that all rules and regulations approved by the Fire Chief, except those needed for administrative and internal functions, shall comply with *Puerto Rico Rules and Regulations Act of 1958*, as amended by the *Puerto Rico Uniform Administrative Procedure Act*, 3 P.R. Laws Ann., §2101*et seq*.  P.R. Laws Ann.,Tit. 25, §331g.  Moreover, any person affected by an order, resolution or decision of the Fire Chief may request judicial review before the local state courts.  P.R. Laws Ann.,Tit. 25, §331n.

Furthermore, the Court notes that all employees members of the PRFC are subject to the personnel norms and regulations of the Central Office of Personnel Administration "in order to maintain uniformity in the Public Service system of Puerto Rico", P.R. Laws Ann.,Tit. 25, §331g; the Fire Chief shall adopt the regulations established for said purposes by the General Services Administration of the Government of Puerto Rico, P.R. Laws Ann.,Tit. 25, §331g; the funds necessary to implement the Act are consigned in the General Expense Budget of the Government of Puerto Rico, Act, No. 43, of June 21, 1988, section 34; and the firefighters' uniform and necessary equipment is to be provided by the PRFC, and the appropriations for said purchases shall be consigned in the agency's annual budget, P.R. Laws Ann.,Tit. 25, §331x.  Finally, the enacting Act creates the Volunteers Firefighters Corps composed of members of the community serving in a voluntary capacity and its members are considered as "Commonwealth officials" while in their performance of their duties for purposes of the "Compensation System for Work-Related Accidents Act".  P.R. Laws Ann.,Tit. 25, §331z.

Upon an application of the *Metcalf & Eddy, Inc.'s* factors to determine whether the PRFC is an alter ego of the Commonwealth of Puerto Rico, the Court must conclude that, in fact, the PRFC

is an "arm" of the government of Puerto Rico.  The Court readily reaches said conclusion for the following reasons, to wit, the PRFC's funds are appropriated in the government's general budget; the Fire Chief is appointed by the Governor with the advice and consent of the Senate; the duties of preventing and fighting fires, saving lives, and guaranteeing adequate protection to the citizenry from fires is governmental in nature; the PRFC is not separately incorporated rather, it is part of the executive branch; state control and public policy are exerted through  the Fire Chief; the PRFC's enacting Act failed to provide the PRFC with legal capacity to sue, or be sued, nor to enter contracts in its own name and right; and finally, the enacting Act does not provide that the PRFC's property nor the donations received, as allowed by law, are subject to state taxation nor the state has immunized itself from responsibility for PRFC's acts or omissions.

Similarly results are produced under the *Fresenius* and *Hess* analysis.  The PRFC's Chief is appointed by the Governor with the advise and consent of the Senate; the PRFC is considered an agency of the Commonwealth of Puerto Rico and its determinations shall be appealed to the local court, the PRFC has delegated authority to issue Rules and Regulations, the employees of the PRFC are covered by the personnel law governing governmental employees, the PRFC lacks judicial capacity to sue or be sued and must make its appearances through the Commonwealth's  Secretary of Justice; the PRFC's functions are governmental in nature; and finally, the enabling law does not allow the PRFC to enter into any contract in its own name and right.  These indicators point into the same direction hence the Court needs not to examine whether the state's purse is at stake.

**d) Prospective Injunctive and Declaratory Relief**

It is well established that under the Eleventh Amendment,  injunctive relief is only available prospectively. *Edelman v. Jordan*, 415 U.S. 651, 666-667 (1974)(standing for the proposition that injunction is only available to govern official's future conduct but retroactive relief is barred by the Eleventh Amendment).  Accordingly, state officials acting in their official capacity are not protected from claims for prospective injunctive relief by the immunity afforded by the Eleventh Amendment since said immunity only shields said officials against claims seeking monetary relief.  *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108 (1st Cir. 2003). See also, *Redondo-Borges v. U.S. Dept. HUD*, 421 F.3d 1 (1st Cir. 2005)(stating that Eleventh Amendment immunity do not bar prospective injunctive relief against official-capacity defendants); *Chalk Services, Inc., v. Massachusetts Com'n Against Discrimination*, 70 F.3d 1361 (1st Cir. 1995).

It is also well established that in claims arising under section 1983, a district court has broad

power to grant injunctive relief. *Knowles v. Board of Public Instruction*, 405 F.2d 1206, 1207 (5th Cir. 1969). See also, *Dombrowski v. Pfister*, 380 U.S. 479 (1965)(stating that a complaint under the Civil Rights Act seeking declaratory and injunctive relief for alleged violation of law is sufficient irreparable injury to justify equitable relief). Furthermore, when a federal court faces the depravation of a constitutionally guaranteed right, the duty of the court to use injunctive power to interfere with conduct of state officers cannot be avoided. See *Woods v. Wright*, 334 F.2d 369 (5th Cir. 1964). Accordingly, the Court has authority to issue injunctive relief enjoining state officials from specific prospective conduct, and specifically, an injunction based on a valid cause of action may be issued against officials of the Commonwealth of Puerto Rico without violating the principles set forth by the Eleventh Amendment. *Litton Inductries, Inc. v. Colon*, 587 F.2d 70 (1st Cir. 1978).

It is important to add that "[a] declaratory judgment is not available when the result would be a partial 'end run' around the rest of the Supreme Court's Eleventh Amendment jurisprudence, particularly its limitations on the *Ex parte Young* doctrine." *Mills v. Maine*, 118 F.3d 37, 55 (1st Cir. 1997)(quoting *Green v. Mansour*, 474 U.S. 64, 73 (1985)(declaratory relief cannot be granted against a state where "the award of declaratory judgment ... would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution could be computed)). The result is obvious because "the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." *Mills v. Maine*, 118 F.3d at 54.

## LEGAL ANALYSIS

At the outset, the Court must dismiss with prejudice plaintiff's claims against the Commonwealth of Puerto Rico due to the immunity provided by the Eleventh Amendment. As stated previously, Puerto Rico is treated for many judicial purposes as a State, and thus, is entitled to a full measure of Eleventh Amendment immunity. *Espinal-Dominguez v. Commonwealth of Puerto Rico*, 352 F.3d 490, 494 (1st Cir. 2003); *Jusino-Mercado v. Commonwealth of Puerto Rico*, 214 F.3d 34, 37 (1st Cir. 2000); *Ortiz-Feliciano v. Toledo-Davila*, 175 F.3d 37, 39 (1st Cir. 1999); *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Authority*, 991 F.2d 935, 939 (1st Cir. 1993). Therefore, co-defendant, the Commonwealth of Puerto Rico request for dismissal under the

Eleventh Amendment is hereby **GRANTED**.  The Commonwealth of Puerto Rico is hereby **DISMISSED WITH PREJUDICE**.

Similarly, the Court dismisses plaintiff's claims against the Puerto Rico Firefighter Corps. As previously discussed, the Court reached the conclusion that the  PRFC is an "alter ego" or "an arm" of the Commonwealth of Puerto Rico.  As discussed previously, "arms of the state" and/or alter egos" of the state are also entitled to the immunity afforded by the Eleventh Amendment. Therefore, the Court *sua sponte* **DISMISSES WITH PREJUDICE** plaintiff's claims against the Puerto Rico Firefighters Corps.

Further, an examination of the complaint's allegations shows that plaintiff seeks monetary and punitive damages against the individual defendants, injunctive relief against the defendants in their official capacity, and declaratory judgment ruling that the acts performed by the defendants constitute a violation to the constitutional prohibition against gender discrimination and a discriminatory practice or custom of the Commonwealth of Puerto Rico and/or the PRFC.

There can be no doubt that the individual co-defendants in this case (except their spouses) were acting in their official capacities as officers of the PRFC.  Accordingly, because they were acting in their official capacities, legally they are to be treated as employees of the Commonwealth. And a suit against Commonwealth employee's acting in their official capacities is no different than a suit against the Commonwealth itself.  Under these circumstances thus it is clear that the Commonwealth "is the real, substantial party in interest." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 (1984). Therefore, *prima facie*, co-defendants should be entitled to Eleventh Amendment immunity in their official capacities.  However, the Court is obligated to make an additional analysis, because Plaintiffs are seeking several alternative remedies.

First, as stated before, Defendants are requesting that this Court "declares" that the "acts complained of herein are in violation of the constitutional prohibition against gender discrimination and constitute a discriminatory practice or custom of the Commonwealth of Puerto Rico and/or the Puerto Rico Firefighters Corp". (See Docket No. 1, P. 7).

The Court must indulge all reasonable inferences in Plaintiffs' favor. *Doyle v. Hasbro*, 103 F.3d 186, 190 (1st Cir. 1996).  And inasmuch plaintiff seeks, inter alia, to enjoin the PRFC from continuing to violate plaintiff's constitutional rights, and "[enjoin] co-defendants from further discriminatory actions against plaintiff, including retaliation against her for exercising the rights

referred to in this action", the Court reads plaintiffs' complaint to, inter alia, seek prospective injunctive relief.

The several states (including Puerto Rico) are, as a general rule, immune from private suit in the federal courts, absent their consent under the Eleventh Amendment.  One of the exceptions to this rule, however,  is the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), which allows a plaintiff to enforce a claim of federal right by obtaining injunctive or declaratory relief against a state officer in the officer's official capacity. But this exception is to prevent continuing violations of federal law, not to remedy past violations; thus, under *Ex parte Young*, a plaintiff may obtain only prospective, not retrospective, relief.   See *Greenless v. Almond*, 277 F.3d 601, 607 (1ˢᵗ Cir. 2002)(citing *Edelman v. Jordan*, 415 U.S. 651).

Accordingly, an official-capacity suit is the typical way in which federal courts have held States responsible for their duties under federal law.  Such a suit  "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165(1985)(quoting *Monell v. Department of Social Services of City of N.Y.*, 436 US 658, 690, n.55 (1978)); see also *Pennhurst*, at 101 (1984).  *Edelman*'s distinction between prospective and retroactive relief fulfilled *Young*'s underlying purpose of vindicating the supreme authority of federal law, while at the same time preserving to an important degree the States' constitutional immunity.  *Pennhurst*, at 89-90.

A state official in his official capacity, when sued for injunctive relief, would be a person under §1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 n.10 (1989); *Kentucky*, 473 U.S., at 167, n. 14; *Young*, at 159-160.  Such a suit would not be one against the State since the federal-law allegation would strip the state officer of his official authority. *Young*, at 159-160.

Although prospective relief awarded against a state officer also raises Eleventh Amendment concerns, the interests in ending a continuing violation of federal law outweigh the interests in state sovereignty and justify an award under §1983 of an injunction that operates against the State's officers. *Will*, 491 U.S. at 89-90; see also, *Papasan v. Allain*, 478 U.S. 265, 282 (1986); *Green v. Mansour*, 474 U.S. at 78; *Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Milliken v. Bradley*, 433 U.S. 267, 289 (1977).  Therefore, when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that

awards retroactive monetary relief.  *Edelman*, 415 U.S. at 666-667.  The Court holds that a state official in his official capacity, when sued for injunctive relief, would be a person under §1983 because official-capacity instructions for prospective relief  are not treated as actions against the State. As the First Circuit restated in  *Mills v. Maine*:

> *Ex parte Young* allows a way around the bar to federal jurisdiction erected by the Supreme Court's Eleventh Amendment jurisprudence only in cases where prospective declaratory or injunctive relief is sought under federal law. The *Ex parte Young* doctrine does not apply in cases where plaintiffs seek monetary relief for past violations of federal law, regardless of whether the party the plaintiffs seek to designate as a defendant is nominally a state officer sued in his official capacity.

118 F.3d at 54(internal citations omitted).  Therefore, to the extent that prospective injunctive –but not retrospective–  relief  is sought by plaintiff, the co-defendants in this case have been properly joined in their official capacities.  See also *Metcalf*, 991 F.2d at 938 & n. 2 and cases cited therein.  Under *Ex parte Young*, Plaintiffs have validly alleged a claim for prospective injunctive relief.  Therefore, co-defendants', PRFC's Chief Agustin Cartagena and Interim Chief German Ocasio Morales' are not vested by the immunity provided by the Eleventh Amendment relating exclusively to prospective injunctive.  Consequently, PRFC's Chief Agustin Cartagena and Interim Chief German Ocasio, in their official capacity, remain as litigants to the instant complaint.  However, since the complaint seeks monetary relief from said co-defendants in their individual capacity, they shall remain also as litigants in their individual capacity.

Moreover, Plaintiffs are requesting declaratory relief pursuant to 28 U.S.C. § 2202.  Their request is however precluded by Eleventh Amendment considerations.  The Court explains.  A declaratory judgment action is not considered either legal or equitable in nature. *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 504 (1959).  It is usually denominated as *sui generis* to indicate it is neither purely legal nor purely equitable. *Buromin Co. v. National Aluminate Corporation*, 70 F.Supp. 214, 216 (D. Delaware 1947).  Its character depends upon the nature of the issues involved in each specific action. *State Farm Mutual Automobile Ins. Co. v. Mossey*, 195 F.2d 56 (7th Cir. 1952), *cert. denied*, *DuBois v. Mossey*, 344 U.S. 869 (1952).

In *Green v. Mansour*, 474 U.S. at 72, the Supreme Court held that the Eleventh Amendment and applicable principles governing the issuance of declaratory judgments forbid the award of a declaration that state officials' prior conduct violated federal law.  Justice Rehnquist held that a

declaratory judgment is proper in those instances that **the current conduct** of state officials is violative of federal law and an order enjoining those officials from continuing to violate federal law (i.e, prospective relief or injunction) would have been permissible under the Eleventh Amendment. However, then Justice Rehnquist explained that a declaratory judgment with regard to the state officials' **past violations** of federal law in administering a program was barred by the Eleventh Amendment. See *Id*., at 69.

The Court in *Green* fully and adequately explained the applicable principles governing the issuance of declaratory judgments, pursuant to the Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, and their direct relation to the immunity afforded to the states through the Eleventh Amendment of the Constitution:

> The Declaratory Judgment Act of 1934, 28 U.S.C. §2201, permits a federal court to declare the rights of a party whether or not further relief is or could be sought, and we have held that under this Act declaratory relief may be available even though an injunction is not. But we have also held that the declaratory judgment statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." The propriety of issuing a declaratory judgment may depend upon equitable considerations, and is also "informed by the teachings and experience concerning the functions and extent of federal judicial power."

> In applying these principles, we have held that a declaratory judgment is not available in a number of instances. [1] . . . [it is] not available to obtain a determination of the constitutionality of a state tax even though the relevant federal statute prohibited federal courts only from issuing injunctions against the collection of such taxes. . . . [2] a declaratory judgment declaring a state criminal statute unconstitutional [is] unavailable where it would have much the same effect as an injunction prohibiting enforcement of the statute, and the latter was barred by traditional principles of equity, comity, and federalism. . . . [3] it [is further] inappropriate to issue a declaratory judgment deciding whether the plaintiff's business was interstate commerce and therefore potentially immune from state regulation. We reasoned that if the federal judgment were res judicata in subsequent state proceedings, then the federal court will have lifted the case out of the state court before the state agency or court can hear it. On the other hand, if the federal judgment would not have such an effect, then it would "serv[e] no useful purpose as a final determination of rights."

> . . . [Thus, when t]here is no claimed continuing violation of federal law, . .

. [there is] no occasion to issue an injunction. . . . [n]or can there be any threat of state officials violating the repealed law in the future. [Even if t]here is a dispute about the lawfulness of [a defendant's] past actions, . . . the Eleventh Amendment would prohibit the award of money damages or restitution if that dispute were resolved in favor of [plaintiffs]. We think that the award of a declaratory judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment. . . . [A] declaratory judgment is not available when the result would be a partial "end run" around our decision in *Edelman v. Jordan*.

*Green*, 474 U.S. at 72-73 (internal citations omitted).

Furthermore, the Court foresaw the possibility that a plaintiff might then seek retrospective declaratory relief from a federal government against a state actor, claiming that, if issued, it would not later seek monetary relief in a state court, conveniently claiming the federal judgment would constitute *res judicata*. But the Court foreclosed that possibility by explaining that, under those circumstances, the federal declaratory judgment "would serve no purpose whatever in resolving the remaining dispute between the parties ...." *Green*, 474 U.S. at 73 n.2. For that reason —the Court explained— declaratory judgment is simply "unavailable." *Id*.

Therefore, *Green* held that declaratory judgments expressly adjudicating the question of **past** violations, under 28 U.S.C. § 2202, are precluded by the Eleventh Amendment. See *Green*, 474 U.S. at 66; see also *Greenless v. Almond*, 277 F.3d 601, 607 (1st Cir. 2002)(explaining that *Ex parte Young* "allows a plaintiff to enforce a claim of federal right by obtaining injunctive or **declaratory relief** against a state officer in the officer's official capacity" **only** "to prevent continuing violations of federal law, but **not to remedy past violations**") (emphasis added).

In the case at bar, Plaintiffs have requested that the Court "[e]nter a declaratory judgment pursuant to 28 U.S.C. § 2201". However, inasmuch as they seek to remedy past violations, their petition is bared under Eleventh Amendment. The relief awarded in *Ex parte Young* was, and continues to be, prospective only. See *Edelman*, 415 U.S. at 664. Plaintiffs' request for Declaratory Judgment pursuant to 28 U.S.C. § 2201, for past violations and/or retroactive conduct, is hereby

**DENIED AND DISMISSED**.  For the reasons stated herein, and although defendants have not requested the instant remedy, as a matter of law, the Court is precluded from granting plaintiff's request for a declaratory judgment relating to co-defendants' previous conduct.  Finally, the Court deems that plaintiff has not been deprived of a remedy since the prospective injunctive request still feasible.

Following the *Conley* rule, the First Circuit has stated that a district court should not grant motions to dismiss for failure to state a claim unless it appears to a certainty that plaintiff would be unable to recover under any set of facts he could prove. See *Roma Const. Co. v. aRusso*, 96 F.3d 566 (1st Cir. 1996).  Additionally, the facts and allegations contained in the complaint should be viewed in light most favorable to the plaintiff. See *Harper v. Cserr*, 544 F.2d 1121 (1st Cir. 1976).  Consequently, the Court considers the existence of a possibility that plaintiff may be granted relief based on the facts if proved during discovery proceeding or at an eventual trial, and, therefore, concludes that the prospective injunction remedy claim cannot be dismissed.

## IV. CONCLUSION

For the reasons stated herein, defendant's Motion to Dismiss is hereby **GRANTED in part**.  Co-defendant, the Commonwealth of Puerto Rico request for dismissal under the Eleventh Amendment is hereby **GRANTED**.  The Court *sua sponte* **DISMISSES WITH PREJUDICE** plaintiff's claims against the Puerto Rico Firefighters Corps.  Plaintiffs' request for Declaratory Judgment pursuant to 28 U.S.C. § 2201, for past violations and/or retroactive conduct, is hereby **DENIED AND DISMISSED**.

Finally, the Court notes that defendants in their individual capacity have, for reasons unknown to the Court, failed to answer the complaint and/or otherwise plead.  There is no excuse for the lack of diligence fo timely filing an answer because the immunity afforded by the Eleventh Amendment does not bar damages claims as to these plaintiffs. *Edelman v. Jordan*, 415 U.S. at 668.  As to defendants in their official capacity, they are not barred as to injunctive relief, they should have timely also answered the complaint.  The individual defendants are granted **until July 5, 2006,** to answer the complaint as a gratuitous measure by the Court since they were not the object of the motion to dismiss.  Plaintiff is forewarned that should no answer to the complaint is filed within the time provided, plaintiff shall move for default or the Court shall dismiss the case for lack of interest vindicating whatever rights it may have.  **Absolutely any request for an extension of time from either party shall be SUMMARILY DENIED.**  An Order setting the Initial Scheduling and Case

Management Conference shall be issued forthwith.

       **IT IS SO ORDERED.**
In San Juan, Puerto Rico this 19th day of June 2006.

                                         **S/DANIEL R. DOMINGUEZ**
                                         **DANIEL R. DOMINGUEZ**
                                         **U.S. DISTRICT JUDGE**